UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HOBIE DOMINIQUE                                       CIVIL ACTION

VERSUS                                                NO. 25-2014

SHELL PIPELINE COMPANY, LP, *et al.*                  SECTION M (1)

### ORDER & REASONS

Before the Court is a motion to remand filed by plaintiff Hobie Dominique,[1] to which defendant Shell Pipeline Company, LP ("Shell") responds in opposition.[2] Dominique replies in further support of his motion,[3] and Shell responds with a surreply.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion because Shell has not identified undisputed facts that would preclude Dominique's recovery against the in-state defendant.

I.   BACKGROUND

This case concerns a personal injury that occurred at Shell's oil storage and production facility in Houma, Louisiana.[5] The following facts are taken from Dominique's state-court petition for damages. On March 10, 2025, Dominique, an employee of Chet Morrison Contractors ("CMC"), was present at the Shell facility to perform welding hot work, which included welding metal plates onto an abandoned pipeline to fill in and decommission it.[6] When Dominique arrived at the Shell facility, he was directed to the area where the welding work would be performed and

---

[1] R. Doc. 11.
[2] R. Doc. 13.
[3] R. Doc. 14.
[4] R. Doc. 17.
[5] R. Doc. 3-1 at 5-6.
[6] *Id.* at 5.

received confirmation that the area was gas-free.[7] Dominique descended a ladder to the work area, prepared the area, and reconfirmed that it was safe to weld.[8] Unfortunately, a spark from the welding caused an explosion inside the pipeline, blowing off the plate and causing a large fireball to burst from the pipeline.[9] The fireball struck Dominque, resulting in severe burns to his lower abdomen, thighs, and groin area, while the explosion threw him backwards, causing injuries to his low back.[10] Dominique also claims that he sustained psychological injuries as a result of the accident, including anxiety, depression, and post-traumatic stress disorder.[11]

Dominique filed this action in state court in Terrebonne Parish against Shell and Environmental Safety and Health Consulting Services, Inc. ("ES&H"), alleging that their negligence caused the accident.[12] Dominique alleges that "[u]pon information and belief ES&H was hired by Shell to ensure the worksite and pipeline w[ere] free of any gasses or explosive substances and where the welding hot work was to be performed."[13]

Without ES&H's consent, Shell removed the suit to this Court, invoking subject-matter jurisdiction on the grounds of complete diversity between who it says are the properly joined parties.[14] For diversity-jurisdiction purposes, Shell is a citizen of Delaware and Texas, while Dominique and ES&H are citizens of Louisiana.[15] However, Shell alleged that ES&H is improperly joined, and thus its citizenship should be disregarded.[16] Shell submits that Dominique "misstates the facts that purportedly support his claims against ES&H because ES&H had no role

---

[7] *Id.* at 6.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 5-8.
[13] *Id.* at 6.
[14] R. Doc. 3 at 1. It is undisputed that the amount in controversy is at least $75,000. *See id.* at 8-9; R. Doc. 11.
[15] R. Docs. 3 at 3-4; 3-1 at 5 (explaining that ES&H is a Louisiana corporation).
[16] R. Doc. 3 at 5-8.

2

in ensuring that the welding worksite and the pipeline at issue were free of any gases or explosive substances and in no way caused or contributed to the flash fire that allegedly injured [him]."[17] Shell further states that its employees or CMC's employees were "the only personnel involved in the decisions regarding and performance of the welding work, including the managing of residual crude oil/crude oil vapors in the pipe, ventilating the pipe, and gas testing."[18] Shell claims that it hired ES&H as an independent contractor to assist in oil spill response operations, and "[o]n the date of the incident, ES&H's only role related to the welding work at issue was to operate a vacuum truck, which was used to remove water from the hole surrounding the pipeline that [Dominique] was standing in while welding, which did not cause or contribute to the flash fire."[19] Further, according to Shell, ES&H "did not exercise control over the worksite, the pipeline, or any of the work activities relating to the welding work" and ES&H employees were not involved in, and did not sign off on, the job safety analysis hazard checklist or the gas testing certificate that were both filled out prior to the accident.[20] In sum, Shell contends that there is no reasonable basis for Dominique's recovery against ES&H, the sole in-state defendant.[21]

## II.  PENDING MOTION

Dominique moves to remand the present action to state court, arguing that ES&H is a properly joined defendant whose citizenship cannot be ignored and whose consent to removal was required.[22] Dominique asserts that ES&H "was contracted to remove the flammable substances from inside of the hole where [he] was directed to weld," and its "actions and/or inactions in removing the flammable substances directly caused or contributed to his injuries."[23] According to

---

[17] *Id.* (quote at 6).
[18] R. Doc. 3 at 7.
[19] *Id.*
[20] *Id.*
[21] *Id.* at 7-8.
[22] R. Doc. 11.
[23] R. Doc. 11-1 at 1-2.

Dominique, because he alleges that ES&H was responsible for removing the flammable substances from the worksite, and Shell admits that ES&H was operating a vacuum truck removing substances from the area, he has stated a plausible negligence claim against ES&H for failing to remove the flammable substances from the hole.[24] Dominique characterizes Shell's statements in the notice of removal as "self-serving" and contends that Shell has not met its burden to show that he has "absolutely no possibility" of recovering from ES&H.[25] He also urges this Court to consider that the litigation is in very early stages, as "[t]here has been no discovery up to this point."[26]

In opposition, Shell submits that it is uncontested that ES&H only removed rainwater from the excavation site where Dominique performed welding repairs on the exposed pipeline, "which has nothing to do with the combustion of hydrocarbons that remained inside of the pipeline or elsewhere."[27] In support, Shell provides three declarations: Lee Arcement, Vice President of ES&H, attests that ES&H merely operated a vacuum truck which drained water from the excavation site;[28] Matt Herpel, Engineer Assistant at Shell, attests that ES&H was only tasked with removing rainwater from the excavation site, which had nothing to do with the hydrocarbon combustion that allegedly injured Dominique;[29] and Chris Van Allen, Superintendent at CMC, attests that CMC, not ES&H, was responsible for ensuring that the pipeline was cleaned and free of contaminates prior to the commencement of the welding work.[30] Based on these declarations, Shell maintains that Dominique cannot show that ES&H owed him any duty of care, that ES&H breached any duty of care, or that ES&H's conduct caused the flash fire which allegedly injured

---

[24] *Id.* at 3.
[25] *Id.* at 4.
[26] *Id.*
[27] R. Doc. 13 at 7.
[28] R. Doc. 13-1.
[29] R. Doc. 13-2.
[30] R. Doc. 13-3.

Dominique.[31] Thus, says Shell, Dominique has not stated a claim against ES&H, and there is no reasonable basis for the Court to predict that Dominique may be able to recover against ES&H.[32] Finally, Shell argues that it did not need to obtain consent from ES&H prior to removal, as ES&H is an improperly joined party.[33]

In reply, Dominique provides the sworn declarations of himself and Keontae Siverand, a CMC employee who witnessed ES&H's operations at the jobsite on the day of the incident involving Dominique.[34] According to Siverand, the liquid which had collected at the worksite and which ES&H removed was "a mixture of water, crude oil, and sludge," which was flammable, and he attests further that the ES&H vacuum truck inserted its hose into areas of the pipe to remove sludge and crude oil from the pipe.[35] Dominique's declaration contains a nearly identical account of the substance pooled at the excavation site and ES&H's operations on the date of the incident.[36] Dominique's reply thus argues that the declarations "establish[] a genuine dispute as to the nature of ES&H's work and extent of its involvement on the day of the incident," which shows a possibility of his recovery against ES&H and warrants remand.[37]

In its surreply, Shell posits that, because Dominique alleged that Shell hired ES&H to ensure there were no gasses or explosive substances in the worksite and pipeline, and Dominique cannot provide evidence to "contradict that this duty was the responsibility of [CMC] and [Shell], not ES&H," Dominique has no reasonable possibility of recovery against ES&H.[38] Shell urges that, even assuming that the water ES&H removed from the worksite contained crude oil and

---

[31] R. Doc. 13 at 10.
[32] *Id.* at 8-9.
[33] *Id.* at 9.
[34] R. Docs. 14 at 1; 14-1 (Siverand's declaration); 14-2 (Dominique's declaration).
[35] R. Doc. 14-1 at 1.
[36] R. Doc. 14-2 at 2.
[37] R. Doc. 14 at 2-3 (quote at 2).
[38] R. Doc. 17 at 1-2 (quote at 2).

sludge, Dominique "has not explained how that sludge caused the flash fire or its removal created a duty under Louisiana law."[39] It also claims that remand should be denied because Dominique does not present evidence which contradicts that CMC had the duty to ensure the welding worksite was free of gas and took steps to manage residual crude oil and crude oil vapors in the pipe.[40]

### III.  LAW & ANALYSIS

#### A. Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)). Because federal courts have only limited jurisdiction, the removal statute is strictly construed, and any doubts or ambiguities are resolved against removal and in favor of remand. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723.

#### B. Improper Joinder

Removal of a case to federal court requires complete diversity. 28 U.S.C. § 1332(a). In addition to the requirement that the parties be completely diverse, § 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly joined and served as defendants is a citizen of the State in

---

[39] *Id.* (quote at 1).
[40] *Id.* at 2.

which such action is brought.'" *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018) (quoting 28 U.S.C. § 1441(b)(2), and citing *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)). Where a party in question has been improperly joined, neither a lack of complete diversity nor § 1441(b)(2) will render an action non-removable. *Id.* Instead, if a "plaintiff improperly joins a non-diverse defendant, … the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). The defendant can demonstrate improper joinder by showing either (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant in state court. *Mumfrey*, 719 F.3d at 401. The improper joinder doctrine is a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). "Under the second prong (inability to establish a cause of action), the court must determine whether 'there is arguably a reasonable basis for predicting that state law might impose liability.'" *Id.* (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross*, 344 F.3d at 462 (emphasis in original). "[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit explained the procedure used by courts to determine whether a plaintiff has improperly

7

joined a nondiverse defendant.  A court first looks "at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* at 573.  However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder ... the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.*  The Fifth Circuit "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74.  In conducting such an inquiry, the district court may "consider summary judgment-type evidence in the record, but [it] must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).  Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Id.*

### C. Analysis

Shell contends that removal was proper because ES&H was improperly joined by Dominique.  To determine the propriety of joinder, a court need only answer the question of "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573.  Shell's opposition does not argue that the allegations against ES&H in Dominique's petition could not survive a Rule 12(b)(6) challenge – only that Dominique misstates or omits facts that would determine the propriety of joinder.[41]  As a result, this Court only conducts the summary inquiry, the purpose of which is

---

[41] *See* R. Doc. 13 at 6.

limited "to identify[ing] the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.

In this case, the facts to which Shell points to show that Dominique has no possibility of recovery against ES&H are not undisputed, as *Smallwood* and its progeny require. Shell argues that Dominique cannot show that ES&H owed him any duty of care, that ES&H breached any duty of care, or that ES&H's conduct caused the flash fire which allegedly injured Dominique, so there is no possibility of Dominique's recovery against ES&H.[42] And it bases this argument on its contentions that "ES&H was not tasked to ensure, nor did it actually perform any work to ensure, that the worksite or pipeline w[as] free of any gases or explosive substances prior to the welding work beginning" and that "ES&H was also not involved in the decisions or implementation of managing residual crude oil/crude oil vapors in the pipe or worksite for the welding work at issue."[43] Its argument also relies heavily on what it says is a lack of evidence in the record to contradict the facts it presents in its declarations.[44]

However, the facts which are potentially determinative of Dominique's recovery against ES&H *are* disputed. Siverand's and Dominique's declarations relate that they observed ES&H personnel performing the exact functions which Shell avers ES&H did not perform that day.[45] Not only do their declarations contradict Shell's evidence that ES&H removed only rainwater from the excavation site, but they provide evidence that ES&H performed work to ensure that the worksite was free of hazardous materials. And, contrary to Shell's assertion, ES&H's actions could reasonably give rise to a duty of care which ES&H owed to Dominique. Indeed, even if ES&H was not specifically hired by Shell to remove hazardous material from the worksite or the pipe,

---

[42] *Id.* at 8.
[43] *Id.* at 7.
[44] *Id.* at 8.
[45] R. Docs. 14-1 at 1-2; 14-2 at 1-2.

ES&H could have assumed a duty of care to those who could foreseeably be injured through their negligence by voluntarily undertaking that task. *Schulker v. Roberson*, 676 So. 2d 684, 688 (La. App. 1996) ("'If a person undertakes a task which he had no duty to perform, he must perform the task in a reasonable and prudent manner.'" (quoting *Crane v. Exxon Corp., U.S.A.*, 613 So. 2d 214, 221 (La. App. 1992))); *see also Dartlone v. La. Power & Light Co.*, 763 So. 2d 779, 785 (La. App. 2000) (collecting cases).

Finally, Shell's argument that Dominique's only allegation against ES&H in his petition for damages is that ES&H was hired by Shell to keep the area free of gasses or explosive substances is a non-starter. Dominique makes several factual allegations against ES&H, including, among others, that it failed "to properly purge the pipeline before allowing hot work to begin" and failed "to properly evacuate all gas from the pipeline involved."[46] In Louisiana's fact-pleading system, these allegations alone are sufficient to state a claim against ES&H for negligently performing the task for which Shell says it was hired (*i.e.,* removing rainwater), even if Dominique's allegation that Shell hired ES&H to perform the work of removing hazardous substances is ultimately shown to be untrue. *Greemon v. City of Bossier City*, 65 So. 3d 1263, 1268 (La. 2011) ("Because the 'theory of the case' pleading requirement has been abolished, 'so long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence.'" (alteration omitted) (quoting *Cox v. W.M. Heroman & Co.*, 298 So. 2d 848, 855 (La. 1974))).

Therefore, because there is evidence that ES&H undertook some activity that purportedly affected hazardous materials at the worksite, the Court finds that Shell failed to carry its "heavy

---

[46] R. Doc. 3-1 at 7.

burden" of demonstrating that Dominique has no reasonable possibility of recovery against ES&H, the in-state defendant.[47]

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Dominique's motion to remand (R. Doc. 11) is GRANTED, and this case is REMANDED to the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana.

New Orleans, Louisiana, this 13th day of November, 2025.

                                                          BARRY W. ASHE
                                                          UNITED STATES DISTRICT JUDGE

---

[47] Because the Court has decided that removal is improper based on a lack of diversity jurisdiction, it need not decide whether the notice of removal was procedurally improper because ES&H did not consent. Nevertheless, this Court agrees with Shell that because Shell asserted that ES&H was improperly joined, Shell was not required to obtain ES&H's consent to removal. *See Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007); *Mauldin v. Allstate Ins. Co.*, 757 F. App'x 304, 309 (5th Cir. 2018).